

40 Broad Street, 7th Floor
New York, New York 10004
Telephone: 212.943.9080

**Michele A. Moreno**
Partner
mmoreno@vandallp.com

September 19, 2023

**VIA EMAIL AND ECF**
Hon. Andrew E. Krause, U.S.M.J.
United States District Court
300 Quarropas Street
White Plains, NY 10601

      Re:    Bray et al. v. New York Gypsum Floors, Inc. et al.
               Case No.: 7:21-cv-2340-AEK

Dear Judge Krause:

      Virginia & Ambinder, LLP ("V&A"), along with co-counsel Anderson Dodson ("AD"), represent Plaintiffs in this wage and hour action. The parties jointly submit their settlement of this action for approval by the Court as required by Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015). A copy of the Settlement Agreement ("Agreement") is annexed to the accompanying Declaration of Michele A. Moreno ("Moreno Decl.") as Exhibit A.[1] The parties consent to proceed before Your Honor for all purposes, including for review of the settlement agreement and to conduct any hearings related to settlement approval.

      Separately, Plaintiffs' counsel also seeks an award of reasonable attorneys' fees and costs as part of the *Cheeks* review process.

    **I.**    **Relevant Facts and History**

      Defendant NYGF is a Westchester-based construction company that specializes in floor underlayment and leveling all over the tri-state area. NYGF typically works on the construction of, *inter alia*, multi-family rentals, multi-family affordable housing, senior housing, assisted living, hospitality, and dormitories, renovation of office and warehouse conversions, and the repurposing of big box retail. Defendant Phillips is the principal, President, CEO, and sole owner of NYGF. Plaintiffs worked for Defendants performing floor underlayment and leveling, and other work incidental thereto, such as operating pumps, mixing and pouring floor leveling compound, finishing the floors, and loading materials and driving trucks to and from Defendants' warehouses to various job sites.

---

[1] The Agreement has been executed by Plaintiffs but is still awaiting signature from Defendants. The parties will supplement this filing with the fully executed version of the Agreement as soon as it is received.

On March 17, 2021 Plaintiffs commenced this class and collective action against Defendants for violations of the FLSA and NYLL including, *inter alia*, failure to pay wages for hours worked and overtime, failure to pay proper prevailing wages and benefits, and failure to provide wage notices and accurate pay statements. Defendants filed their Answer on May 21, 2021. [Dkt. Nos. 11, 12.]

On July 15, 2021, Plaintiffs moved for conditional certification of the FLSA collective pursuant to 29 U.S.C. § 216(b). [Dkt. No. 20.] On August 20, 2021, the Court ordered that this action proceed as a collective action. [Dkt. 30.] Thereafter, notice was distributed to "all non-management hourly paid individuals who have worked for New York Gypsum Floors on or after the date six years before the filing of the Complaint in this action (i.e., March 17, 2015 to the date of the Court's Order on this motion)." [Dkt. 29-1, 30.] In addition to the two Named Plaintiffs, twenty-six other individuals filed Consent to Join forms ("Opt-In Plaintiffs").

The parties exchanged extensive paper discovery and conducted depositions of Defendant Phillips (in both an individual and representative capacity) and nineteen Plaintiffs.

The parties attended three settlement conferences before Your Honor on April 23, 2023, May 5, 2023, and September 7, 2023. As a result of Your Honor's assistance and good faith efforts between counsel thereafter, the parties have reached a settlement on behalf of the Named and Opt-In Plaintiffs for a total of $586,326.63, exclusive of attorneys' fees and costs. Plaintiffs make a separate application for an award of attorneys' fees and costs of $407,000.00.

## II.    Issues in the Case

Plaintiffs' First and Second Causes of Action assert claims for unpaid hours worked, including overtime, under the FLSA and NYLL. At their depositions, Plaintiffs testified that Defendants paid them for less hours than they worked, including weeks where overtime was implicated. This was supported by Defendants' own contemporaneous time and payroll records, which showed that the workers were paid less than their recorded work hours. Named Plaintiffs Bray and Landor also testified to time working "off-the-clock," for such uncompensated tasks including driving company trucks to work sites throughout New York, and chauffeuring workers to and from their homes to projects sites, much of which was not recorded on any timesheets.

Plaintiffs' Second Cause of Action asserts a claim for a failure to provide pay stubs and wage notices in accordance with the NYLL. Specifically, Plaintiffs allege that Defendants failed to furnish "wage notices" containing all required information, in contravention of NYLL § 195(1)(a) and § 198(1)(b), and accurate "pay stubs" in contravention of NYLL §195(3), §198(1)(d).

Plaintiffs' Third Cause of Action asserts a third-party beneficiary breach of contract claim for failure to pay prevailing wages and benefits. Defendant NYGF employed Plaintiffs to work on publicly financed construction projects in New York State, New York City, New Jersey, and Connecticut. Plaintiffs allege Defendants paid a lower prevailing wage and benefit rate than Plaintiffs were entitled to receive for the work they performed.

Plaintiffs' Fourth and Fifth Causes of Action assert retaliation claims for Named Plaintiffs, based on the allegations that Named Plaintiffs were terminated after complaining to Defendant Phillips about not receiving overtime pay, not being paid for all hours worked, and improper deductions from their pay.[2]

### III.  Settlement Valuation

Based on time and payroll records provided by Defendants, as well as Plaintiffs' testimony, Plaintiffs completed extensive damage calculations for 16 opt-in Plaintiffs. These calculations, when compared to Plaintiffs' W2 earning, showed an average yearly underpayment of 7%. Accordingly, to calculate damages for the remaining 12 Plaintiffs, a 7% underpayment was calculated based on their yearly W2 earnings.

The calculated damages were for unpaid hours and overtime, damages for unpaid prevailing wages and benefits, liquidated damages on the wage claims, and damages for wage notice and pay statement violations, as well as additional damages for off the clock work, unreimbursed expenses, and retaliation for Named Plaintiffs Bray and Landor.

Based on these calculations and subsequent negotiations between the Parties, the agreed upon amount owed for wages and wage and notice violations was $586,326.63, exclusive of attorneys' fees and costs. This settlement represents almost a full recovery of the calculated damages owed to Plaintiffs. Attorney's fees and costs are being sought separately and will not reduce Plaintiffs' individual damage allocations.

### IV.  The Fair and Reasonable Settlement

The parties have agreed to settle this matter in the amount of $586,326.63 for Plaintiffs' claims, and have further agreed that the Court shall determine Plaintiffs' attorneys' fees and costs award separate and apart from the wage settlement amount, with the maximum attorneys' fees and costs award to be capped at $407,000.00 total. Defendants are reserving the right and intend to oppose Plaintiffs' counsel's fee and costs application.

In Cheeks, the Second Circuit raised concerns with settlement agreements that contain (1) a battery of highly restrictive confidentiality provisions, (2) overbroad release provisions, and (3) provisions that set attorneys' fees at over 40%. Cheeks, 796 F.3d at 206. None of the concerns raised in *Cheeks* are present in this Agreement:

(1) The Agreement will be filed publicly with the Court as an exhibit to this letter motion and does not contain a confidentiality provision;

---

[2] Plaintiffs' Complaint also asserts claims for unpaid spread of hours in violation of the NYLL (Dkt. 1, Second Cause of Action); and fraudulent reporting (Dkt. 1, Sixth Cause of Action). For settlement purposes, Plaintiffs forfeited these claims.

3

(2) The Agreement contains only a specific release relative to wage and benefit claims under federal and state law for the 26 opt-in Plaintiffs. Named Plaintiffs Bray and Landor, who asserted retaliation claims under the FLSA (29 U.S.C. § 215(a)(3)) and NYLL § 215(2) and in consideration for additional compensation for such, will also release all claims related to retaliation contrary to the anti-retaliation provisions of the FLSA and NYLL, wrongful termination, and any and all other causes of action they have asserted or could have asserted against Employer.

(3) Plaintiffs' counsel is seeking an award of attorneys' fees and costs in an amount not to exceed $407,000.00, which is significantly less (25%) than Plaintiffs' counsels' collective lodestar of $557,796.79 through September 17, 2023.[3]

The Agreement calls for the stipulated dismissal of this action with prejudice should the Court approve of same. The Second Circuit holds that stipulated dismissals pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure settling FLSA claims with prejudice require the approval of the district court or the United States Department of Labor to take effect. *Cheeks*, 796 F.3d at 206. In considering whether to approve an FLSA settlement, the Court should examine the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Wolinsky v. Scholastic, Inc., 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012). Here, the Agreement meets all of these factors.

**(1) Range of Possible Recovery**

This settlement represents a full recovery of the calculated damages owed to Plaintiffs and is therefore fair and reasonable.

**(2) The Agreement Enables the Parties to Avoid Anticipated Burdens and Expenses of Litigation**

This settlement enables the parties to avoid the anticipated burdens and expense of further litigation. At the last status conference before the Court, Judge Seibel ordered the parties to finalize all depositions, damage calculations for all Plaintiffs, and the motion for class certification by a date certain. [*See* February 10, 2023 Minute Entry for proceedings.] Had the parties continued to litigate, they would have incurred the additional time and expense of even more depositions, damage calculations, and briefing a contested class certification motion. Thereafter, the case would have proceeded to expert discovery, summary judgment, and trial, which likely would have taken over a year and resulted in the expenditure of hundreds of thousands of dollars in additional legal fees.

**(3) The Risks of Litigation**

---

[3] This represents V&A fees of $460,726.67 and costs $4,149.62 ($464,876.29); and PD fees of $90,920.50 and costs of $1,644.25 ($92,920.50).

Both sides faced risks by continuing with litigation. A substantial portion of Plaintiffs' damages arises from their recordkeeping violation claims under NYLL 195(1) and (3). Although Plaintiffs feel confident that they would have prevailed at trial, there is conflicting case law regarding the propriety of these claims and whether they constitute a concrete injury. *See e.g.* Francisco v. NY Tex Care, Inc., 2022 U.S. Dist. LEXIS 55633 (E.D.N.Y. Mar. 28, 2022) *compared with* Mateer v. Peloton Interactive, Inc., 2022 U.S. Dist. LEXIS 125017 (S.D.N.Y. July 14, 2022). *See also* Imbarrato v. Banta Mgmt. Servs., 2020 U.S. Dist. LEXIS 49740 (S.D.N.Y. Mar. 20, 2020). Accordingly, there was a risk that if Plaintiffs proceeded to trial they may not have succeeded on this theory, ultimately resulting in no recovery. Further, because some of Plaintiffs' unpaid wage claims involved off the clock work, and Defendants disputed the amount of hours spent working off the clock, it was unknown how many hours Plaintiffs would have been able to prove at trial, resulting in a smaller recovery for those claims. Finally, by settling now rather than proceeding with litigation, Plaintiffs also avoid the risk of any possibility of financial or economic hardship faced by Defendants, leading to the Plaintiffs' inability to collect even if they prevail. This was a real risk that was raised by Defendants during mediation, and which accord with Plaintiffs' own factual research.

As for Defendants' risks, a majority of the alleged wage violations appeared on the face of Defendants' own records and are supported by the near identical testimony of at least 19 Plaintiffs. Accordingly, and because Plaintiffs' motion for class certification would have likely succeeded (wage and hour actions are routinely certified), Defendants faced the risk of a jury awarding 100% of damages to the entire class (approximately 75 individuals as opposed to the 28 opt-ins), plus interest, as well as all attorneys' fees and costs that they would have owed pursuant to the FLSA and NYLL's fee shifting provisions.

**(4) The Agreement is the Product of Arm's-Length Negotiations**

Both sides were represented by experienced counsel and settled the claims after completing written discovery and depositions, and after attending three settlement conferences before Your Honor. This was a true arm's length negotiation that led to a fair and reasonable settlement. "[C]onsidering the Settlement Agreement resulted from 'arm's length bargaining between experienced counsel,' there is 'no evidence to suggest fraud or collusion.'" Huggins v. Chestnut Holdings Inc., 2022 U.S. Dist. LEXIS 3156, at *5 (S.D.N.Y. Jan. 5, 2022) (quoting Strauss v. Little Fish Corp., 2020 U.S. Dist. LEXIS 126393 (S.D.N.Y. July 17, 2020).

**V.      Plaintiffs' Motion for Attorneys' Fees and Costs**

Plaintiffs' counsel seeks $407,000 for attorneys' fees and costs for the two law firms that represented Plaintiffs, inclusive of costs (presently $5,793.87) and anticipated settlement administrator fees of approximately $6,000.00

**(1) Plaintiffs Are Entitled to Attorneys' Fees and Costs as the Prevailing Party**

The FLSA and NYLL are fee-shifting statutes that entitle the prevailing party to recover its reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("In any action . . . in which the employee prevails, the court *shall* allow such employee reasonable attorney's fees . . .") (emphasis

5

added). "'[A] plaintiff is considered to be a prevailing party for the purposes of the FLSA "if [he or she] succeeds on any significant issue in litigation which achieves some of the benefit [the party] sought in bringing [the] suit.'" Dillatoro v. D'Onofrio, 2022 U.S. Dist. LEXIS 95121, *9 (E.D.N.Y. May 25, 2022) (quoting Andrews v. City of New York, 118 F. Supp. 3d 630, 634-35 (S.D.N.Y. 2015).

This includes a favorable settlement. "'Where, as here, a plaintiff obtains a favorable settlement in an FLSA action, that plaintiff constitutes a prevailing party.'" Dillatoro, at *9 (citations omitted). *See also* Kahill v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) ("The fact that [plaintiffs] prevailed through a settlement rather than through litigation does not weaken [plaintiffs'] claim to fees"). Here, the settlement is favorable as it achieves a robust recovery for Plaintiffs, including liquidated damages.

### (2) Plaintiffs' Attorneys' Fees and Costs are Reasonable

Trial courts enjoy a great amount of discretion to determine what a "reasonable" attorney fee is. Arbor Hill v. Cnty. of Albany, 493 F.3d 110, 117 (2d Cir. 2007). While there is much debate about calculation methods and what amounts qualify as "reasonable" attorney fees, several important themes have emerged. First, compensation to the attorneys must be adequate to incentivize quality representation of claimants. Second, the size of the attorney fee award need not be proportional to the size of the damage award. Indeed, "the Second Circuit has recently held that in FLSA cases, the attorneys' fees need not be proportional to the damages awarded to the plaintiff." Dillatoro, at *8 (citing Fisher v. SD Prot. Inc., 948 F.3d 593, 602-03 (2d Cir. 2020). Third, the attorney fees awarded must not be "excessive." Overarching several of these is the concept that "reasonableness" goes both ways – it should neither be excessive, nor too low.

"Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" Millea v. Metro-North R.R., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008)). Plaintiffs' Counsels' total lodestar billings in this action exclusive of costs is $551,647.17.[4] Plaintiffs' counsels' proposed fee of $407,000.00 is less than the lodestar, resulting in a negative multiplier through this date of (407,000/551,647.17 = .737). This is *well below* the lodestar multipliers that are regularly awarded in this District. *See e.g.* Manley v. Midan Rest. Inc., 2017 U.S. Dist. LEXIS 44560, *34 (S.D.N.Y 2017) (HBP) (awarding a 1.63 multiplier in an FLSA settlement, and noting that it was "well within the range of multipliers that courts have allowed."); Hart v. RCI Hospitality Holdings, 2015 U.S. Dist. LEXIS 126934, *38-39 (S.D.N.Y. 2015) (awarding a 1.08 multiplier in an FLSA settlement which the Court described as "quite low relative to the multipliers in many cases in which fees have been approved in this District" and further nothing that "[i]t is not at all uncommon for fees to be awarded that reflect multiples of plaintiffs' counsel's lodestar.").

At the outset of this case, AD met with Named Plaintiffs and performed thorough intakes; reviewed the information that had been gathered, analyzed it to determine the specific claims at issue and conducted research on the corporation and owners; drafted and sent a demand letter; drafted and filed the complaint; interviewed and obtained statements from several witnesses;

---

[4] This does not include much of the time spent preparing the instant application for settlement and fee approval.

conferred with Defendants' counsel; drafted a successful motion for conditional certification and tended to the administration of notice distribution and receipt of opt-in forms; engaged in extensive paper discovery and conducted a deposition of Defendant Phillips; drafted and served post-deposition discovery demands; reviewed voluminous amounts of time and payroll records; attended mediation and the settlement conferences before this Court; attended several Court conferences; and drafted the first draft of the Agreement. *See* Ex. B.

In or around October 2022, Virginia & Ambinder (V&A) joined AD as co-counsel. Defendants requested that Plaintiffs produce "auditable evidence of damages claimed" for all twenty-eight (28) opt-in Plaintiffs. Plaintiffs, recognizing the labor and resources needed to produce "auditable" damage reports, initially objected to this request and proposed the production of a sampling analysis for a handful of Plaintiffs. Nevertheless, Judge Seibel granted Defendants' request and directed Plaintiffs to produce damage calculations for every single Plaintiff on a rolling basis. [See Dkt. 86.] This was extremely labor intensive, as it required V&A's certified public accountant, Maria Tokarz, and her data entry team to comb through tens of thousands unorganized, scanned copies of time and payroll records and then manually enter the data for each person, many for whom there were years' worth of documentation. Plaintiffs completed damage calculations for 16 Plaintiffs before the matter settled. The audit process took four forensic analysts many weeks to complete.

Defendants also noticed all 28 Plaintiffs for depositions, and completed depositions of 19 of the 28. V&A met with and prepared each of the 19 deponents for their depositions, which required numerous communications to coordinate schedules and attorney review of each deponent's records. V&A attorneys devoted hours, preparing, prepping and defending each deponent. Other work incurred by V&A included, but was not limited to, attending Court conferences; drafting Plaintiffs' responses to Defendants' second set of Interrogatories; meeting and conferring with Defendants' counsel regarding discovery disputes; drafting a motion for class certification (which, prior to settlement was due to be filed with the Court imminently); engaging in settlement negotiations, preparing for and attending three settlement conferences; conferring with Named Plaintiffs throughout settlement negotiations and reviewing the final settlement agreement with them; and drafting the instant motion for settlement. V&A will also continue to incur additional fees and costs associated with effectuating the settlement, such as coordinating with Plaintiffs and paying settlement administrator fees. *See* Ex. C.

Plaintiffs' counsel's experienced representation in this case was greatly responsible for bringing about the positive settlement, and weighs in favor of granting the requested fees. [*See* Moreno Decl., detailing AD's and V&A's professional qualifications and extensive experience prosecuting wage and hour actions.] The rates charged by AD and V&A are reasonable and well within the accepted rates for attorneys of commensurate skill in the wage and hour field within the Second Circuit and this District.[5,6] *See e.g.* Carbajal v. K&P Facilities Maint. Inc., 2023 U.S. Dist. LEXIS 108476, at *12 (S.D.N.Y. June 22, 2023) (Krause, J.) (approving FLSA settlement with billing rates of $225, $500, and $600 per hour); Mercado v. Metro. Transp. Auth., 2023 U.S. Dist.

---

[5] *See* Moreno Decl. for Plaintiffs' counsel's rates.

[6] As evident from the contemporaneous billing sheets (Exs. B and C), both firms utilized paralegals and other administrative staff who bill at a lower rate than attorneys where possible.

LEXIS 84303, at *10 (S.D.N.Y. May 15, 2023) (Torres, J.) (approving hourly rates of $550 to $500 per hour for partners, $350 to $400 per hour for associates, and $150 to $175 per hour for paralegals, as reasonable particularly "given the risk of taking on a contingency fee case, the complexity of this matter, and the substantial success obtained in this action."); Brown v. City of N.Y., 2020 U.S. Dist. LEXIS 204095, at *16 (S.D.N.Y. Nov. 1, 2020) (Nathan, J.) (approving rates of $540/550 for partner, "[g]iven counsel's extensive experience litigating wage-and-hour claims and the prevalent rates for partners and associates of like experience in this District, this Court agrees with many other courts in concluding that the hourly rates of these particular attorneys are reasonable."); Guallpa v. NY Pro Signs, Inc., 2014 U.S. Dist. LEXIS 77033, at *27-*29 (S.D.N.Y. May 27, 2014) (Maas, J.) (awarding $300-$600 per hour for experienced FLSA attorneys). *See also Canales v. Norwich Serv. Station, Inc. et al.*, 2021 U.S. Dist. LEXIS 231980 (E.D.N.Y. Dec. 3, 2021) (Wicks, J.) (approving a rate of $500 for a named partner).

Similar rates for AD and V&A have been approved in other actions. *See e.g.*, Cohan v. Columbia Sussex Mgmt., LLC, 2018 U.S. Dist. LEXIS 179192 (E.D.N.Y. Sept. 28, 2018) (Tomlinson, J.) (approving rates of $525.00 per hour for V&A partner Lloyd Ambinder, $395.00 per hour for V&A senior associate, $250.00 per hour for V&A junior associate, and $100.00 to $125.00 per hour for V&A paralegals, and noting that V&A provided "quality representation");Griffin v. Aldi, Inc. (5:16-cv-354) (N.D.N.Y. November 15, 2018) (Kahn, J.) (approving rates of $525.00 per hour for V&A partner Lloyd Ambinder, $450.00 per hour for V&A partner James E. Murphy, $425.00 per hour for V&A senior associates, $325.00 per hour for V&A junior associates, and $125.00 for V&A paralegals); *See also* Chowdhury v. Shuvo, 2023 U.S. Dist. LEXIS 116317 (S.D.N.Y. July 5, 2023) (Torres, J.) (approving rates of $450 per hour for AD partner Penn Dodson and $175 for AD paralegals); Lee v. Samiti Tech., No. 21-CV-1032 (CBA) (TAM), 2021 U.S. Dist. LEXIS 170514 (E.D.N.Y. Sep. 8, 2021) (Merkl, J.) (approving rates of $475 per hour for AD partner Christopher Anderson and $450 per hour for AD partner Penn Dodson).

### (3) The Size of the Fee Award Need Not Be Proportional to the Settlement Amount

The FLSA and NYLL are remedial statutes that are designed to protect the wages of workers, and they specifically provide for an award of reasonable attorney's fees to be paid by the Defendants. 29 U.S.C. § 216(b); NYLL § 663. To reject Plaintiffs' counsels' fees, which are reasonable under the Second Circuit's definition, on the grounds that it is not proportional to the Plaintiffs' recovery would run contrary to this public policy. Clover v. Shiva Realty of Mulberry, Inc., 2011 U.S. Dist. LEXIS 51697, *10-11 (S.D.N.Y. 2011). Indeed, as recently held by the Second Circuit:

> Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a "reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a "reasonable attorney's fee" must be a "proportional" fee.
>
> . . .

8

> A proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a "uniquely protective statute." *Cheeks*, 796 F.3d at 207. In 1938, Congress enacted the FLSA to guarantee workers "[a] fair day's pay for a fair day's work" and to guard against "the evil of 'overwork' as well as 'underpay.'" *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)). By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2010 U.S. Dist. LEXIS 1120, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). In advancing Congress's goals under the FLSA to ensure a "fair day's pay for a fair day's work," the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation. *Missel*, 316 U.S. at 578.

Fisher v. SD Prot. Inc., 948 F.3d 593, 603 (2d Cir. 2020). *See also* Torres v. Gristede's Operating Corp. 519 F. App'x 1, *8 (2d Cir. May 22, 2013) (upholding a $3.42 million fee award within a $3.53 million settlement, rejecting the defendants' argument that the fees were disproportionately large relative to the settlement) (citing Farrar v. Hobby, 506 U.S. 103, 114 (1992)); Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005) ("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation.")

Many other Courts in this Circuit have held similarly. *See e.g.* Fleetwood Servs. v. Ram Capital Funding, LLC, 2023 U.S. Dist. LEXIS 2121, at *21 (S.D.N.Y. Jan. 5, 2023) (rejecting argument that the hours should be reduced in light of the amount at stake as meritless); Brown v. City of N.Y., 2020 U.S. Dist. LEXIS 204095, at *14 (S.D.N.Y. Nov. 1, 2020) ("it is well-established in this circuit that '[i]n FLSA cases the attorney's fees need not be proportional to the damages plaintiffs recover, because the award of attorney's fees in such cases encourages the vindication of Congressionally identified policies and rights.'"); Severino v. 436 W. L.L.C., U.S. Dist. LEXIS 195376, at *8 (S.D.N.Y. Oct. 28, 2016) ("'In FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.'"); Clover v. Shiva Realty of Mulberry, Inc., 2011 U.S. Dist. LEXIS 51697 (S.D.N.Y. May 13, 2011) ("Fees in civil rights statutes are not to be linked to the dollar value of a claim."); Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) ("[C]ourts have rejected the notion that fee awards should be proportionately tied to a plaintiff's recovery. The fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, terms of expected recovery, to create a financial incentive for qualified counsel to take such cases

under conventional fee arrangements.")). In other words, it is acceptable for attorney fee awards to be bigger than the amounts awarded to the plaintiffs, or for them to constitute the majority of an overall damages award.

As noted by the Honorable Denny Chin in Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d at 520, n. 7 (S.D.N.Y. Aug. 28, 2022):

> Even if the plaintiff [who brings a claim under the wage and hour laws] recovers the maximum possible damages, she may recover only a modest amount if she is employed in a position that pays only a modest salary, such as a waiter or waitress in a restaurant. In view of her excellent results, however, her attorney likely deserves a full award of fees. Yet if attorneys' fees were proportionally tied to a plaintiff's recovery, however, the award would necessarily be low. Accordingly, in rejecting a rule of proportionality, the Supreme Court sought to avoid precisely this result.

*See also* Estrella, 596 F. Supp. 2d at 727 (noting that in a case where attorneys represented workers that would not have been able to retain counsel under ordinary billing arrangements, a reduction of fee to reflect the client's recovery was not consistent with the legislative purpose underlying [the fee provisions of the FLSA and New York Labor Law]."); Ayres v. 127 Restaurant Corp., 1999 U.S. Dist. LEXIS 7935 (S.D.N.Y.1999) (attorneys' fees award should not be reduced merely because plaintiffs' monetary recoveries were modest, where plaintiffs were "everyday workers" who were members of restaurant wait staff).

\*   \*   \*

For the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith and which provides that the Court will retain jurisdiction over this matter solely for the purposes of enforcing the Agreement. Plaintiffs further respectfully request that the Court approve Plaintiffs' counsel's application for an award of attorneys' fees and costs.

Respectfully submitted,

*/s/ Michele A. Moreno*
Michele A. Moreno