UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

WILLIAM BRAY and JOHN LANDOR,
*in their individual capacities and on behalf*
*of others similarly situated*,

                                   Plaintiffs,

                    -*against*-

NEW YORK GYPSUM FLOORS INC. and
STEPHEN P. PHILLIPS,

                                   Defendants.

------------------------------------------------------------x

**DECISION AND ORDER**

21 Civ. 2340 (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

     Plaintiffs William Bray and John Landor commenced this action on March 17, 2021,

asserting claims on behalf of themselves and all others similarly situated against Defendants

New York Gypsum Floors Inc. and Stephen P. Phillips for violations of the Fair Labor Standards

Act ("FLSA") and New York Labor Law ("NYLL") based on Defendants' alleged failures to,

among other things, pay wages for hours worked and overtime, pay spread of hours wages, and

provide required pay stubs and wage notices.  Mr. Bray also brought claims for retaliation.[2]  ECF

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).
ECF No. 98.

[2] In their motion for approval of the proposed settlement, Plaintiffs assert that both Mr.
Bray *and* Mr. Landor alleged retaliation claims in the complaint, *see* ECF No. 107 ("*Cheeks*
Motion") at 3, 4, but the fourth and fifth causes of action as set forth in the complaint only
contain allegations on behalf of Mr. Bray.  The *Cheeks* Motion explains that the proposed
settlement agreement includes a broader release provision for Mr. Bray and Mr. Landor than for
the 26 opt-in plaintiffs because Mr. Bray and Mr. Landor will be compensated for their
retaliation claims.  *See id.*  The Court interprets this to mean that Mr. Bray is being compensated
for the retaliation claims he actually brought, and that Mr. Landor is being compensated for
retaliation claims that he purportedly could have brought as part of this action.

No. 1.  Before the Court is the parties' motion for approval of their proposed settlement agreement, *see* ECF No. 107-3 (and ECF No. 112-1), in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), along with a parallel motion for approval of attorneys' fees and costs.  For the reasons that follow, the *Cheeks* Motion is DENIED WITHOUT PREJUDICE, and the motion for attorneys' fees and costs is GRANTED IN PART, DENIED IN PART, and DENIED WITHOUT PREJUDICE IN PART.

## DISCUSSION

### I.    The Proposed Settlement Agreement

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor."  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020).  Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable.  *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021).  When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36).  In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Xiao v. Grand Sichuan Int'l St. Marks, Inc.*, Nos. 14-cv-9063, 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

The Court has reviewed the parties' submissions in support of the proposed settlement, and is also familiar with the claims and defenses in this case from having presided over three settlement conferences. Even so, the parties must provide additional information before the Court can make a final determination as to the fairness and reasonableness of the proposed settlement.

As a threshold matter, the Court does not have sufficient information to evaluate the first *Wolinsky* factor—the range of possible recovery for the two named plaintiffs and the 26 opt-in plaintiffs. The *Cheeks* Motion states both that "[t]his settlement represents almost a full recovery" and that "[t]his settlement represents a full recovery" of the calculated damages owed to Plaintiffs, either of which would certainly counsel in favor of settlement approval. *Cheeks* Motion at 3, 4. But while the parties briefly explain the methodology used to calculate the potential damages, *see id*. at 3, they do not provide enough detail for the Court to understand the maximum potential recovery at trial for the settling Plaintiffs, the different components of damages, or how the settlement amount is expected to be distributed among the settling

Plaintiffs. *Compare Barsa v. Beacon Health Options, Inc.*, No. 19-cv-1646 (JPO) (BCM), 2020 WL 7240346, at *1 & ECF No. 137-1 at 3-4 (S.D.N.Y. July 10, 2020) (in collective action involving more than 40 plaintiffs, proposed settlement agreement included detailed methodology and list of specific awards to each plaintiff). There is also no indication as to how much of the settlement amount is to be allocated to the actual or potential retaliation claims of Mr. Bray and Mr. Landor. The Court attempted to use other, more detailed information that was provided to the Court in connection with the of settlement conferences to try to better understand the figures in the proposed settlement agreement. In particular, the Court analyzed Plaintiffs' counsel's breakdown of various categories of potential damages set forth in an April 19, 2023 letter to Defendants' counsel, which was submitted as part of Plaintiffs' counsel's April 21, 2023 pre-settlement conference letter to the Court. These figures provided "per person" calculations of various categories of potential damages, drawn from the extensive damage calculations performed by Plaintiffs' counsel based on the review of records produced by Defendants. Yet the Court could not precisely sync these figures with the proposed settlement amount put forward in the *Cheeks* Motion.[3] A similar level of detail, which would allow the Court to understand the different components of potential damages (including for the retaliation claims), and counsel's assessment of the maximum potential amount of recovery at trial for each settling plaintiff, must be provided. Without this information, the Court is not able to approve the proposed settlement. *See, e.g., Amaro v. Barbuto, LLC*, No. 16-cv-1581 (AJN), 2017 WL 476730, at *2 (S.D.N.Y. Feb. 2, 2017) (rejecting a motion for settlement approval where the parties provided

---

[3] To be clear, the Court is not suggesting that there is any impropriety in the fact that the figures in the April 19, 2023 letter do not precisely map onto the proposed settlement amount—there are any number of reasons why there may have been adjustments to the calculations, for example as a result of additional information learned in the course of settlement negotiations or from a clearer understanding of the documentary evidence.

methodology, but not the underlying figures, to support their damages calculation); *Linares v. Cosan Constr. Corp.*, No. 22-cv-6267 (VSB), 2024 WL 1076997, at *2 (S.D.N.Y. Feb. 12, 2024) (rejecting motion for settlement approval because the Court did "not have sufficient information concerning [p]laintiff's range of possible recovery or how that recovery is broken down"); *Picorelli v. Watermark Contractors Inc.*, No. 21-cv-2433 (KMK), 2022 WL 2386761, at *3 (S.D.N.Y. July 1, 2022) (requiring the parties to provide additional "documentation supporting the [s]ettlement [a]mount or the total possible recovery amount").

Relatedly, the lack of information in the proposed settlement agreement and the proposed "Notice of Collective Action Settlement," *see* ECF No. 107-3 at 12, about the method for calculating the potential settlement payments is an ambiguity that requires clarification. Section II.D of the proposed settlement agreement addresses "Damage Assessments" in vague terms, with no explanation of certain amounts to be paid to Mr. Bray and Mr. Landor for claims that pertain only to them, and no attempt to describe how the payments for the opt-in plaintiffs will be determined. Notably, the Notice of Collective Action Settlement makes reference to "the formula in the settlement agreement discussed in section 5 below," but there is no formula included in the proposed settlement agreement, and section 5 of the Notice of Collective Action Settlement is about Plaintiffs' counsel, and not about the proposed settlement agreement or any payment allocation formula. Section 2 of the Notice of Collective Action Settlement does discuss the proposed settlement agreement, but does not contain any formula. Rather, it states only that payments will be "allocated to each person based on extensive calculations based on time and pay records and other documents performed by a Certified Public Account[ant] [*sic*] hired by Plaintiffs' counsel," without providing any explanation of what those calculations entailed.

The Court also needs additional information about what will happen if an opt-in plaintiff does not either endorse and negotiate, or return, his or her settlement check within the 60-day window referenced in the proposed settlement agreement and the Notice of Collective Action Settlement. *See* ECF No. 107-3 at 5, 13. The proposed settlement agreement (§ IV.B) and the Notice of Collective Action Settlement (¶ 4) contemplate that an opt-in plaintiff may reject a settlement payment by returning the settlement check to the settlement administrator, and would thereby be deemed to have opted out of the settlement. The Notice of Collection Action Settlement (¶ 3), but *not* the proposed settlement agreement, indicates that the opt-in plaintiffs are required to endorse and negotiate the settlement check within 60 days. The release language in section VII.A of the proposed settlement agreement appears to apply to "all Plaintiffs," though this presumably must exclude those Plaintiffs who follow the procedures for opting out within 60 days. But neither the Notice of Collective Action nor the proposed settlement agreement expressly address whether an individual who has neither endorsed and negotiated nor returned a check will be considered to have released his or her claims. The parties also do not address whether it is appropriate for claims to be deemed released for individuals who have affirmatively opted in to this case, but who, for whatever reason, might not receive the settlement check or might not be able to act on it within 60 days. It also is not clear what will happen to the funds allocated to an opt-in plaintiff who does not endorse and negotiate or return his or her check. The parties must modify the proposed settlement agreement and the Notice of Collective Action Settlement to clarify these issues.

The remaining *Wolinsky* factors, however, are satisfied. As to the second factor, the proposed settlement will enable the parties to avoid significant expenses and burdens associated with establishing their claims and defenses. Substantial discovery has been undertaken

already—the parties have completed 19 depositions, and Plaintiffs have provided extensive damages calculations for 16 of the opt-in plaintiffs.  Were the parties to continue litigating this case, they would likely have to complete depositions of, at minimum, the nine remaining opt-in plaintiffs, and perform additional time-consuming damages calculations.  They also would have to engage in extensive and contentious briefing of Plaintiffs' motion for class certification, as well as expert discovery, summary judgment briefing, and trial, all of which would be extremely time consuming and costly.  The proposed settlement allows the parties to resolve this case without these extra expenditures.

The third *Wolinsky* factor also supports approval of the proposed settlement.  Both parties would face litigation risks if this case were to proceed to trial.  Defendants generally deny Plaintiffs' allegations and argue that Plaintiffs were properly compensated for all hours worked. *See* ECF No. 12.  Plaintiffs maintain that Defendants' own records—as well as testimony from the already completed depositions—lend support to Plaintiffs' alleged wage violation claims, and Defendants could face the possibility of a significantly larger damages award for approximately 75 individuals in a potential class action, as opposed to the damages to be paid to the 28 settling plaintiffs.  *See Cheeks* Motion at 5.  Plaintiffs also face risks at trial.  A substantial component of Plaintiffs' contemplated damages is tied to alleged violations of the NYLL's wage notice and wage statement requirements, and Plaintiffs appropriately recognize that there is real risk as to whether they could prove that they suffered a concrete injury as a result of these violations.  *See id.* (citing cases); *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024).  Because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for all parties.

As for the fourth and fifth *Wolinsky* factors, the Court presided over three separate settlement conferences and observed firsthand that the proposed settlement is the product of arm's-length bargaining between experienced counsel.[4]  Moreover, the Court has no reason to believe that the proposed settlement is the product of fraud or collusion.

Three *Wolinsky* factors that weigh against approval require some discussion here.  That 26 current and former employees of Defendants opted in to this lawsuit after receiving notice of the litigation, *see* ECF Nos. 31-36, 40-42, 45-48, 51, 58, 62, 70, indicates that there were many employees who claim to have been similarly situated to the named plaintiffs who initiated this action.  But the fact that so many of these individuals apparently saw this lawsuit as a way to vindicate their rights after receiving adequate notice of the suit should not weigh *against* settlement approval, especially where, as here, it appears (subject to confirmation through further submissions) that the robust negotiated settlement meaningfully addresses Defendants' alleged FLSA and NYLL violations.  There is no indication that there are additional employees who wished to participate in this action but have not been able to do so.  As for whether the circumstances that gave rise to this lawsuit will recur, it does appear that at least some of the opt-in plaintiffs may continue to be employed by Defendants.  The proposed settlement agreement does not include any impermissible bars on Plaintiffs seeking reemployment with Defendants. *See Bonaventura v. Gear Fitness One NY Plaza LLC*, No. 17-cv-2168 (ER), 2021 WL 1907368, at* 2 (S.D.N.Y. Apr. 12, 2021) (stating that such reemployment bars "conflict with the FLSA's primary remedial purpose" (quotation marks omitted)).  It also provides explicit protections for

---

[4] Even though the proposed settlement agreement states that the parties participated in two settlement conferences with the court, *see* ECF No. 107-3 at 2, the *Cheeks* Motion accurately recites that the parties participated in three settlement conferences, which took place on April 24, May 5, and September 7, 2023, *see Cheeks* Motion at 2.

any opt-in plaintiffs who remain employed by Defendants as of the date the agreement is executed, by stating that they do not forfeit their employment and expressly reiterating the FLSA and NYLL prohibitions against retaliation. ECF No. 107-3 §§ V.A, V.B. Moreover, the Court expects that the very substantial costs incurred by Defendants to litigate and resolve these claims will provide a strong incentive to ensure that they do not face the risk of similar litigation in the future.

The remaining negative *Wolinsky* factors are not present in this case—the Court is not aware of a history of FLSA non-compliance by this employer, and the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

The proposed settlement agreement does not contain any improper confidentiality or non-disparagement provisions, and includes a release provision for the opt-in plaintiffs that is properly limited to the wage-and-hour claims asserted in this action and related claims that could have been asserted. *See, e.g., Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021).

For Mr. Bray and Mr. Landor, however, the proposed settlement agreement contemplates a broader general release, to account for the fact that the settlement of their claims is specifically designed to encompass claims for retaliation. *See* footnote 2, *supra*. This proposed release language is problematic. Courts have approved broad general releases in settlement agreements resolving FLSA claims when those releases were negotiated by competent counsel for both sides and involve former employees who have no ongoing relationship with the employer—both factors that are present here—and, critically, were *mutual in all respects*. *See Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015); *Khan v.*

*Young Adult Institute, Inc.*, No. 18-cv-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016).  Indeed, this Court in particular has approved broad general releases when those releases were mutual.  *See, e.g., Swain v. Jodlowski,* No. 20-cv-617 (AEK), 2021 WL 2313478, at *2 (S.D.N.Y. May 7, 2021), *subsequent determinations* 2021 WL 6101017, at *2 (S.D.N.Y. Nov. 5, 2021) and ECF No. 43 (S.D.N.Y. Nov. 12, 2021); *Molling v. Liebenbrau LLC*, No. 23-cv-3436 (AEK), 2024 WL 1048009, at * 3 (S.D.N.Y. Mar. 11, 2024); *McDermott v. Archcare Cmty. Servs., Inc.*, No. 22-cv-3051 (AEK), 2023 WL 8258003, at * 3-5 (S.D.N.Y. Nov. 28, 2023).  But while the broader release for Mr. Bray and Mr. Landor is labeled "Full Mutual General Release (Landor and Bray Only)," it is not mutual at all.  The language binds only Plaintiffs Bray and Landor, and makes no mention of any release by Defendants.  *See, e.g., River v. SA Midtown LLC*, No. 16-cv-2097 (PAE), 2017 WL 1378264, at *2 (S.D.N.Y. 2017) (rejecting a settlement agreement where a mutual release was not fully symmetrical).  If the parties wish to have the settlement agreement include a broad general release of claims by Mr. Bray and Mr. Landor, the language of section VII.B of the proposed settlement agreement must be revised.

## II.    Attorneys' Fees and Costs

The parallel motion for attorneys' fees and costs—which is contested by Defendants, *see* ECF No. 110 ("Defs.' Opp.")—is presented in a manner that is not typical of a request for fees and costs in the context of an FLSA settlement.  Most often, the parties have negotiated a total proposed settlement payment, with attorneys' fees and costs included as part of the overall payment amount.  In those circumstances, if a court determines that the requested award for attorneys' fees and costs is too large, the settlement amount usually remains the same, with the rejected fees being reallocated to the plaintiff(s).  *See, e.g., Sanchez v. IND Glatt, Inc.*, No. 16-

cv-3446 (PK), 2018 WL 10468019, at *2 (E.D.N.Y. Jan. 4, 2018).  Here, the parties have agreed on a total payment to Plaintiffs, which will not be adjusted based on the Court's evaluation of the application for attorneys' fees and costs.  Instead, if the Court orders a lesser recovery on the motion for attorneys' fees and costs, Plaintiffs' counsel will simply receive a lower payment, and Defendants will retain the difference between the requested amount and the awarded amount. Because the amount of the fee award does not affect the sum to be paid to Plaintiffs, the Court is able to consider the motion for attorneys' fees and costs, even though the application for settlement approval is being denied without prejudice at this time.

Plaintiffs' counsel seek a fee award of $407,000, inclusive of costs and anticipated settlement administration fees, *Cheeks* Motion at 5; Defendants maintain that the fee award should be limited to either $172,449 or $220,723.38, *see* Defs.' Opp. at 34.

## A.    Legal Standards

"Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . . ."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  The trend in courts in the Second Circuit is toward the percentage of the fund method, "because it directly aligns the interests of [p]laintiff[s] and [their] counsel."  *Gonzalez v. Citusa Park Avenue LLC*, No. 20-cv-2326 (AT), 2020 WL 8920703, at *2 (S.D.N.Y 2020) (cleaned up); *Flores v. CGI Inc.*, No. 22-cv-350 (KHP), 2022 WL 13804077, at *9 (S.D.N.Y. Oct. 21, 2022). But the "percentage of the fund" method is not appropriate for the type of agreement at issue here—because the amount to be paid to Plaintiffs is fixed, the objective of aligning the interests of Plaintiffs and their counsel is not present in the same way.  Put differently, Plaintiffs' counsel negotiated a substantial settlement payment for Plaintiffs, which purportedly covers all or nearly all of Plaintiffs' alleged damages, and counsel are now separately pursuing a fee award and assuming any risk associated with the possible non-approval of the fee award.  Accordingly, the

Court finds that the lodestar method is more appropriate to determine the reasonableness of the requested fee award in this case.

"A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Flores*, 2022 WL 13804077, at *9; *see Sung v. Top Sys. Alarm Inc.*, No. 21-cv-2446 (WFK) (JAM), 2024 WL 2312455, at *5 (E.D.N.Y. May 22, 2024) (quoting *Goldberger*, 209 F.3d at 50).

The lodestar amount is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (cleaned up). "While there is a strong presumption that this amount represents a reasonable fee, it may be adjusted upward or downward based on other considerations." *Sung*, 2024 WL 2312455, at *5 (cleaned up). Applying the lodestar method, Plaintiffs' counsel and their support staff spent a total of 2,335.43 hours on this case, for a lodestar fee of $557,441.54.[5][6] The $407,000 requested by Plaintiffs' counsel represents approximately 73 percent of the lodestar.

---

[5] Virginia & Ambinder LLP spent 1,967.63 attorney and staff hours for a total lodestar of $460,726.67, plus costs of $4,149.62. ECF No. 107-2 ("First Moreno Decl.") ¶ 6. AndersonDodson P.C. spent 367.8 attorney and staff hours for a total lodestar of $90,920.50, plus costs of $1,644.75. *Id.* The total lodestar number in the First Moreno Declaration differs from that in Plaintiffs' motion by $355.25, which appears to be due to an arithmetic error. *Cheeks* Motion at 2; First Moreno Decl. ¶ 7.

[6] As a threshold matter, Defendants contend that the Court should entirely disregard the fees and costs requested by AndersonDodson because the AndersonDodson billing records were not properly authenticated. Defs.' Opp. at 10. The Court disagrees. The AndersonDodson

The Court will first evaluate the reasonableness of the hourly rates requested for the various timekeepers at the two firms that represented Plaintiffs in this action; next, the Court will consider the reasonableness of the total number of hours expended by Plaintiffs' counsel and their staff; and finally, the Court will apply the *Goldberger* factors to assess the reasonableness of the total contemplated fee award.

### B.    Hourly Rates

The Court turns first to the hourly rates of attorneys Penn Dodson, Michelle Moreno, Lloyd Ambinder, and Christopher Anderson, each of whom represented Plaintiffs at different stages of this litigation.  A reasonable hourly rate is "generally the 'prevailing market rate[ ] for counsel of similar experience and skill to the fee applicant's counsel.'"  *Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 656 (S.D.N.Y. 2019) (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)).  "In deciding what constitutes a reasonable rate, a court may consider 'rates awarded in prior cases and the court's own familiarity with the rates prevailing in the

---

billing records were attached to the declaration of Virginia & Ambinder attorney Michelle Moreno when Plaintiffs' counsel submitted the *Cheeks* Motion.  ECF No. 107-4.  As there is no reason to believe that Ms. Moreno would have personal knowledge about the AndersonDodson billing records, this was not an appropriate method for submitting and authenticating these documents.  But this problem was cured in Plaintiffs' counsel's reply submission, via the affidavit submitted by AndersonDodson partner Penn Dodson, who attested to the accuracy of the AndersonDodson billing records.  *See* ECF No. 112-5 ("Dodson Decl.") ¶ 32.  The Court finds unpersuasive Defendants' argument, *see* Defs.' Opp. at 11, that this method of curing the deficiency was impermissible.  Most importantly, there was no prejudice to Defendants—all of the billing records relied on by Plaintiffs were included with the original *Cheeks* Motion, and Defendants had all of the information necessary to offer arguments about the sufficiency of the billing records in their opposition submission.  *See id.* at 20-23.  Defendants' reliance on *U.S. ex. rel. Karlin v. Noble Jewelry Holdings Ltd.*, No. 08-cv-7826 (JGK) (KNF), 2012 WL 1228199, at *5 (S.D.N.Y. Apr. 9, 2012), is misplaced.  *See* Defs.' Opp. at 10-11.  In *Karlin*, the party seeking the award of attorneys' fees failed to submit contemporaneous time records at the time the original motion was filed, which deprived the defendants of the opportunity to "make an informed response to the motion."  2012 WL 1228199, at *5.  Defendants did not face this problem here.

district.'" *Id.* "The relevant community to which the court should look is the district in which

the case was brought." *Id.* (quoting *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381,

386 (S.D.N.Y. 2000)).

Defendants do not challenge the $450 per hour rate billed by Ms. Dodson, and the Court

finds this rate to be reasonable. Ms. Dodson has more than two decades of experience litigating

labor and employment cases, *see* Dodson Decl. ¶ 5, 9, and this rate is in line with awards for

other similarly experienced litigators in FLSA cases in this District, *see Ramirez v. Marriott

Int'l*, No. 20-cv-2397 (PMH), 2023 WL 2447398, at *4 (S.D.N.Y. Mar. 10, 2023) (recognizing

"a $300-$500 hourly rate range for attorneys" for FLSA cases in this District); *see also Montalvo

v. Paul Bar & Rest. Corp.*, No. 22-cv-1423 (JLR) (SN), 2023 WL 6519717, at *10 (S.D.N.Y.

Aug. 11, 2023) (awarding Ms. Dodson this same hourly rate), *adopted as modified by* 2023 WL

5928361 (S.D.N.Y. Sept. 13, 2023). Defendants also do not challenge the $350 per hour rate for

Virginia & Ambinder partner Michelle Moreno or the $550 per hour rate for Virginia &

Ambinder partner Lloyd Ambinder. Ms. Moreno has nearly a decade of experience litigating

labor and employment matters, and Mr. Ambinder has nearly 35 years of experience in this area.

First Moreno Decl. ¶¶ 9-10. In light of this experience and the successful results obtained for

Plaintiffs in this matter, this Court finds that both of these requested hourly rates are reasonable.

*See Paguay v. Cantini*, No. 11-cv-6266 (VEC), 2014 WL 12775308, at *3 (S.D.N.Y. Aug. 1,

2014) (approving a fee of $525 per hour for Mr. Ambinder due to "Virginia & Ambinder's

extensive experience litigating wage and hour claims and the successful outcome achieved for

their client").

Defendants challenge the $475 per hour rate for AndersonDodson partner Christopher

Anderson. Defs.' Opp. at 29. Mr. Anderson has been practicing law since 1996, and has

substantial experience in labor and employment cases.  *See* First Moreno Decl. ¶ 14; Dodson

Decl. ¶ 14; ECF No. 111 ("Pls.' Reply") at 5-6.  Mr. Anderson's rate is within the range of rates

generally accepted as reasonable in this District, and the Court finds this rate to be reasonable for

an attorney with his level of experience.

Defendants further object to the hourly rates for paralegals Jess Velez ($175 per hour),

Frankie Brown, ($175 per hour), Ashley Athenas ($195 per hour), Grace Aronofsky ($125 per

hour), Callyn Carter ($125 per hour), Jared Wolff ($125 per hour), and Ana Valerio ($125 per

hour).  Defs.' Opp. at 16, 18, 19, 20.  Courts recently have approved rates for paralegals in this

District ranging from $100 to $150 per hour.  *See Victor v. Sam's Deli Grocery Corp.*, No. 19-

cv-02965 (SLC), 2022 WL 3656312, at *15 (S.D.N.Y. Aug. 25, 2022); *Montalvo*, 2023 WL

5928361, at *6 (finding a rate of $125 per hour appropriate for Ms. Brown and Ms. Velez).  Ms.

Brown and Ms. Velez are both experienced and credentialed paralegals; Ms. Athenas is also

experienced, having spent over decade in the role of paralegal.  Dodson Decl. ¶¶ 15, 16, 18.

Accordingly, the court finds that $125 per hour is an appropriate rate for the work performed by

Ms. Brown, Ms. Velez, and Ms. Athenas.  Ms. Carter has more limited experience and does not

possess any paralegal credentials.  *Id.* ¶ 17.  The Court finds that a rate of $100 per hour is

appropriate for her work in this case.  Plaintiffs' counsel did not provide any information

regarding the qualifications of Ms. Aronofsky, Mr. Wolff, or Ms. Valerio; a reduction of each of

their rates to $100 per hour is therefore appropriate.  *See 1979 Family Trust Licensor, LLC v.

Darji*, No. 19-cv-4389 (VEC), 2020 WL 9596279, at *1 (S.D.N.Y. 2020) (finding a rate

reduction warranted where no qualification information was provided to the court).

Defendants object to the $95 per hour rate charged for client relations specialists Billy

Hernandez and Lauren Pyles.  Defs.' Opp at 20.  But this rate is in line with prevailing hourly

rates in this District for non-attorney staff in FLSA cases. *See Ramirez*, 2023 WL 2447398, at *5 ("The prevailing hourly rate for non-attorney staff, including law clerks, paralegals, and clerical staff, is $100 in this District."). Accordingly, the Court finds the proposed $95 per hour rate for Mr. Hernandez and Ms. Pyles to be reasonable.

Defendants also challenge the $350 per hour rate for forensic accountant Maria Tokarz, as well as the $175 per hour rate for data entry associates Albina Zakharkina[7], Irayda Perez, Yessenia Claudio, and Karine Chan, and data analyst Samuel McMillan. Defs.' Opp. at 24-25, 27. Ms. Tokarz is a certified public accountant with more than 15 years of experience in the field. ECF No. 112 ("Second Moreno Decl.") ¶¶ 6, 11. Yet despite Ms. Tokarz's credentials, the $350 per hour rate requested by Plaintiffs' counsel is a rate that is appropriate for experienced counsel in FLSA cases, and far exceeds rates awarded for non-attorney personnel in this District. *See, e.g.*, *Gonzalez v. Fresh Start Painting Corp.*, No. 18-cv-11124 (PMH), 2022 WL 3701096, at *3 (S.D.N.Y. Aug. 26, 2022) (reducing the hourly rate for a "certified fraud examiner" from $150 to $100 per hour). Indeed, approximately eight years ago, another court in this Circuit considered and significantly reduced the $350 rate requested for Ms. Tokarz. *See Saucedo v. On the Spot Audio Corp.*, No. 16-cv-451 (CBA) (CLP), 2016 WL 8376837, at *19-20 (E.D.N.Y. Dec. 21, 2016) (reducing the $350 hourly rate to "the paralegal rate for non-attorneys of $80.00 per hour"), *adopted by* 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017), *vacated on other grounds*, 2018 WL 4347791 (E.D.N.Y. Jan. 23, 2018). Plaintiffs cite to a text order issued by Judge Brian M. Cogan of the United States District Court for the Eastern District New York to support their contention that other courts have approved Ms. Tokarz's $350 per hour rate. *See*

---

[7] Ms. Zakharkina's last name is also spelled "Zakharina" at various points throughout both parties' submissions. The Court is using the spelling reflected in the Virginia & Ambinder billing records. *See* ECF No. 107-5.

*Drakopoulos v. Ardian Corp.*, No. 15-cv-4717 (BMC), (E.D.N.Y. Mar. 20, 2016).  In that order, however, Judge Cogan stated that "[t]he Court is unaware of typical charges for CPA work in this district in FLSA cases" and that "it seems potentially anomalous that the CPA rate is higher than any of the lawyer rates" requested in the case.  *Id.*  Judge Cogan did ultimately approve the $350 per hour rate for Ms. Tokarz, but in doing so noted that he did not find it necessary to scrutinize that rate given the reasonableness of the rest of the fee application.  *Id.*[8]  The Court does not find any of the authorities cited by the parties to be especially persuasive.  Given Ms. Tokarz's considerable accounting experience, her work on "hundreds of wage-and-hour audits during her tenure" at Virginia & Ambinder, and the significance of the damages analysis to the resolution of this matter, *see* Second Moreno Decl. ¶¶ 6, 11-14, it is not appropriate to reduce Ms. Tokarz's billing rate to that of all other non-attorney staff, including the paralegals in this case.  That said, it also is not appropriate for Ms. Tokarz's hourly rate to be the same as that of Ms. Moreno, the attorney who spent the greatest number of hours litigating this case.  Accordingly, the Court finds that a rate of $225 per hour is appropriate for Ms. Tokarz's work in this matter—this figure represents the midpoint between the $100 per hour rate awarded to most of the non-attorney personnel in this case and the $350 per hour rate awarded for the attorney who received the lowest rate (albeit for the greatest number of attorney hours).  *See also Ochoa v. Prince Deli Grocery Corp.*, No. 18-cv-9417 (ER), 2021 WL 5235222, at *2 (S.D.N.Y. Nov. 8, 2021) (awarding a $200 per hour rate for a newly-admitted attorney); *Garcia v. 120 MP, LLC*,

---

[8] Plaintiffs also cite to the transcript of a conference held before Judge Gregory H. Woods in another case in this District.  *See Chia et al v. 520 Asian Rest. Corp. et al*, No. 17-cv-5885 (GHW), ECF No. 143 (S.D.N.Y. Aug. 28, 2020).  During that proceeding, Judge Woods approved the attorneys' fee motion, which included Ms. Tokarz and her $350 per hour rate.  But despite specifically referencing many of the other timekeepers and billing rates at issue in that motion, Judge Woods did not directly address the merits of Ms. Tokarz's $350 per hour rate.

No. 18-cv-6408 (JPO), 2020 WL 2319126, at *2 (S.D.N.Y. May 8, 2020) (awarding a $200 per hour rate for paralegals in an FLSA case).

With respect to the data entry associates and data analyst rates, as noted above, the typical hourly rate for non-attorney staff in this District is $100. *See Ramirez*, 2023 WL 2447398, at *5. Accordingly, the Court also reduces the hourly rates for Ms. Zakharkina, Ms. Perez, Ms. Claudio, Ms. Chan and Mr. McMillan from $175 to $100 per hour.

### C.    Reasonable Hours

"In calculating the reasonable number of hours expended 'the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary.'" *Williams*, 368 F. Supp. 3d at 656 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (additional quotation marks omitted). "In so doing, the court 'may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Id.* (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)). "Finally, the most critical factor is the degree of success obtained by the plaintiff." *Id.* (cleaned up) (quoting *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008)).

Certain of the hours reflected in the billing records are excessive. First, the time entries for three paralegals—Ms. Velez, Ms. Brown, and Ms. Carter—contained a significant number of short and vague descriptions, as well as numerous instances of administrative or clerical tasks rather than paralegal work. *See generally Cheeks* Motion Ex. B. These entries must be discounted from the total billable hours for these timekeepers. "As a general matter, paralegal work is not compensable if it is purely clerical." *Montalvo*, 2023 WL 6519717, at *11 (cleaned up). "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Sandoval v. Materia Bros. Inc.*, No. 11-cv-4250 (CS) (GAY), 2013 WL 1767748,

at *5 (S.D.N.Y. 2013).  The Court deems a 25 percent reduction of the hours billed by Ms. Velez, Ms. Brown, and Ms. Carter to be appropriate here.  *See Sandoval*, 2013 WL 1767748, at *5.

Second, a significant reduction in the number of hours for the Virginia & Ambinder data entry associates—Ms. Zakharkina, Ms. Perez, Ms. Chan, and Ms. Claudio—is necessary.  Ms. Claudio and Ms. Chan each billed over 500 hours on this matter, and collectively, these four timekeepers billed 1,388.4 hours—this constitutes approximately 71 percent of the total hours billed by Virginia & Ambinder personnel on this matter, and amounts to a staggering *173 full work days*, billing eight hours per day, for this data entry project.  *See* ECF No. 107-5 at 22.  The Court recognizes the importance of this work in enabling Plaintiffs to perform meaningful analysis of Defendants' payroll records, *see* Second Moreno Decl. ¶¶ 11-14, but this is an extraordinary and unreasonable amount of time to produce damages analyses for fewer than 30 plaintiffs.  Accordingly, a 40 percent reduction of the hours billed by the four data entry associates is warranted.  *See Gonzalez*, 2022 WL 3701096, at *6 (applying a 50 percent reduction based on myriad deficiencies in billing records).

Third, Defendants challenge as unreasonable certain of Ms. Tokarz's billing entries, totaling 56.5 hours.  *See* Defs.' Opp. at 24-25.  Plaintiffs do not meaningfully contest Defendants' assertion that these entries are unreasonable; instead, Plaintiffs note that a reduction of 56.5 hours at the hourly rate they requested would still leave the fee award well within the reduction they have already applied to the lodestar.  *Cheeks* Motion at 8.  Because Plaintiffs have not objected to Defendants' challenges, and because the Court agrees that a reduction is necessary, Ms. Tokarz's hours billed will be reduced by 56.5 hours, a reduction of approximately 20 percent of her hours as reflected in the Virginia & Ambinder billing records.

The Court has considered all of Defendants' other challenges to the billing records and finds them to be without merit, or otherwise adequately addressed by the reductions in hourly rates and billable hours set forth above.  In particular, the Court rejects Defendants' arguments regarding the hours billed by Ms. Dodson, Mr. Anderson, Ms. Moreno, and Mr. Ambinder, and finds that the adjustment to the compensable hours of the AndersonDodson paralegals sufficiently accounts for Defendants' specific objections to the billing entries of other non-attorney staff at AndersonDodson.  With the exceptions specified above, the sweeping across-the-board fee reductions requested by Defendants are not warranted on this record.

Applying these revised rates and hours, as set forth in the tables below, the Court finds that an attorneys' fee award of $73,762.50 is reasonable and appropriate for AndersonDodson, and an award of $251,537.50 is reasonable and appropriate for Virginia & Ambinder, for a total attorneys' fee award of $325,300.00.

| AndersonDodson | Reasonable Rate | Reasonable Hours | Total |
|---|---|---|---|
| Jess Velez | $ 125.00 | 124.0 | $ 15,500.00 |
| Callyn Carter | $ 100.00 | 39.5 | $ 3,950.00 |
| Frankie Brown | $ 125.00 | 4.0 | $ 500.00 |
| Ashley Athenas | $ 125.00 | 5.5 | $ 687.50 |
| Penn Dodson | $ 450.00 | 100.3 | $ 45,135.00 |
| Christopher Anderson | $ 475.00 | 11.3 | $ 5,367.50 |
| Lauren Pyles | $ 95.00 | 12.5 | $ 1,187.50 |
| Billy Hernandez | $ 95.00 | 11.0 | $ 1,045.00 |
| Samuel McMillan | $ 100.00 | 3.9 | $ 390.00 |
| | | | $ 73,762.50 |

| Virginia & Ambinder | Reasonable Rate | Reasonable Hours | Total |
|---|---|---|---|
| Jared Wolff | $ 100.00 | 5.3 | $ 530.00 |
| Lloyd Ambinder | $ 550.00 | 107.9 | $ 59,345.00 |
| Michelle Moreno | $ 350.00 | 153.6 | $ 53,760.00 |
| Maria Tokarz | $ 225.00 | 232.1 | $ 52,222.50 |
| Albina Zakharkina | $ 100.00 | 181.4 | $ 18,140.00 |
| Ana Valerio | $ 100.00 | 8.1 | $ 810.00 |
| Grace Aronofsky | $ 100.00 | 15.7 | $ 1,570.00 |
| Irayda Perez | $ 100.00 | 32.3 | $ 3,230.00 |
| Karine Chan | $ 100.00 | 315.6 | $ 31,560.00 |
| Yesenia Claudio | $ 100.00 | 303.7 | $ 30,370.00 |
| | | | $ 251,537.50 |

## D.    Costs

In addition, Virginia & Ambinder seeks costs of $4,149,62, and AndersonDodson seeks costs of $1,644.25. *See Cheeks* Motion at 4 n.3. Counsel in FLSA cases may be awarded reasonable out-of-pocket expenses that are properly substantiated. *See, e.g., Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *6 (S.D.N.Y. June 20, 2016) ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient." (cleaned up)). The costs incurred by Virginia & Ambinder—which appear to be for legal research, the purchase of transcripts, and the use of mail and delivery services—are

reflected in the firm's billing records.  *See* ECF No. 107-5 at 21-22.  Similarly, the

AndersonDodson billing records include an itemized list of costs for the court filing fee, mailing

and subpoena costs, and purchase of a deposition transcript.  *See* ECF No. 107-4 at 83.

Reimbursement of the court filing fee of $402.00, as reflected in the AndersonDodson records,

can be approved without the need for further documentation, because the filing fee is reflected on

the Court's docket.  *See* ECF No. 1; *Anzovino v. Wingate of Dutchess, Inc.*, No. 21-cv-7625

(AEK), 2023 WL 348024, at *4 (S.D.N.Y Jan. 20, 2023).  As for the remaining costs, while all

appear to be typical litigation-related expenses, *see, e.g., Huggins v. Chestnut Holdings Inc.*, No.

18-cv-1037 (PAC), 2022 WL 44748, at *3 (S.D.N.Y. Jan. 5. 2022); *Daniel Zak v. Five Tier, Inc.*,

No. 20-cv-9375 (GBD) (SLC), 2023 WL 11918324, at *13 (S.D.N.Y. 2023), and ultimately may

be approvable by the Court, counsel has not submitted extrinsic proof for these expenses, nor has

counsel submitted a declaration under penalty of perjury that certain amounts were expended on

particular items.  The only reference to the costs and expenses in Ms. Moreno's declaration is a

summary reference to "out of pocket costs of $4,149.62" for Virginia & Ambinder and "out of

pocket costs of $1,644.75" for AndersonDodson.  First Moreno Decl. at 1-2.[9]  Counsel must

submit additional documentation to substantiate these expenses before the Court can approve this

portion of the fee application; with respect to the AndersonDodson costs, the additional

documentation must confirm that entries for subpoenas to Craigslist, Indeed, Clockshark, and

Arker, a FOIL request to "Albany Housing," and correspondence with and records fees paid to

Bank of America, are in fact related to this litigation.  *See* ECF No. 107-4 at 83.

---

[9] Plaintiffs also devote one sentence to AndersonDodson's costs in their reply brief, but that document is not a sworn statement or declaration under penalty of perjury, and also does not explain the amounts that were expended for particular categories of expenses.  *See* Pls.' Reply at 6.

E.    **Application of *Goldberger* Factors**

Application of the *Goldberger* factors confirms that the award of $325,300.00 in attorneys' fees is warranted.

First, the time and labor expended by counsel weighs in favor of approving the award as modified above.  Counsel and their support staff spent considerable time litigating this case, which ended up being more complicated and intensive than a typical FLSA matter.  In addition to standard tasks such as preparing the pleadings and interviewing witnesses, Plaintiffs' legal team collected and processed thousands of pages of payroll records, prepared for and defended depositions for 19 of the Plaintiffs, and prepared detailed damages calculations for 16 of the Plaintiffs, which significantly contributed to the parties' ability to resolve this matter.  *See Cheeks* Motion at 6-7.  Counsel did not even seek compensation for all hours worked, and the Court further reduced the actual award upon careful inspection.  The modified award is clearly appropriate in light of the significant effort by Plaintiffs' legal team.

Second and third, the magnitude and complexities of the litigation and the risk of litigation also weigh in favor of approving the award as modified.  If the case continued, Plaintiffs' counsel would have had to prepare for and defend nine additional depositions and prepare damages calculations for 12 additional plaintiffs.  *See Cheeks* Motion at 7; Pls.' Reply at 12.  Plaintiffs also faced the risk and challenge of class certification and ultimately proving their claims at trial.  Moreover, "counsel undertook this litigation on a contingent basis and have received no payment for their work during the [more than] three years that the case has remained pending, which counsels in favor of approving the requested fee." *Lea v. Tal Ed. Grp.*, No. 18-cv-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021).

Fourth, the quality of the representation weighs in favor of approving the award as modified.  The quality of representation is "best measured by results." *Goldberger*, 209 F.3d at

55.  The Court anticipates that further submissions will confirm the representation that Plaintiffs' counsel has secured their clients "almost a full recovery of the calculated damages owed to Plaintiffs"—a point not disputed by Defendants.  *See Cheeks* Motion at 3.  Courts in this District have approved significant awards where counsel achieved settlements that represented much less than a full recovery.  *See James v. China Grill Mgmt., Inc.*, No. 18-cv-455 (LGS), 2019 WL 1915298, at *2 (S.D.N.Y. Apr. 20, 2019) (approving an award where the settlement provided for 16 percent of the estimated damages).

Fifth, the requested fee in relation to the settlement also weighs in favor of approving the modified award.  The modified fee award constitutes approximately 35 percent of the overall anticipated payment by Defendants in this case, assuming that the Court eventually approves the parties' proposed settlement at the amount contemplated in the current *Cheeks* Motion.  While this percentage of the overall payout is slightly higher than fee awards that are regularly and routinely approved in this District in FLSA cases, the modified fee award approved here is warranted based on all of the facts and circumstances of this case.

Sixth, public policy considerations weigh in favor of approving the modified award.  A court must "guard against providing a monetary windfall to class counsel to the detriment of the plaintiff class."  *See Hart v. BHH*, No. 15-cv-4804 (WHP), 2020 WL 5645984, at *11 (S.D.N.Y. Sept. 22, 2020).  There is no concern of a windfall here—Plaintiffs' counsel's recovery is less than their actual lodestar expenditure, less than the settlement payment to Plaintiffs collectively, and is commensurate with counsel's efforts in litigating this case and achieving an "almost full recovery" for their clients.

**CONCLUSION**

For the reasons set forth above, the motion for approval of the proposed settlement agreement as filed at ECF No. 107-3 (and ECF No. 112-1) is hereby DENIED WITHOUT PREJUDICE.

Plaintiffs' application for attorneys' fees is GRANTED IN PART, DENIED IN PART, and DENIED WITHOUT PREJUDICE IN PART.  For the reasons set forth above, the Court approves an award of $325,300.00 in attorneys' fees and $402.00 in costs at this time, which is only to be paid if the Court eventually grants approval of the proposed settlement.

Plaintiffs' counsel is hereby directed to file a revised motion for *Cheeks* approval to address the issues identified by the Court, including a supplemental submission to substantiate the request for payment of costs and expenses, by no later than October 21, 2024.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 107.

Dated: September 24, 2024
         White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge